**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNIVERSAL LIFE CHURCH :
MONASTERY STOREHOUSE, a : Case No. _____
Washington non-profit corporation; :
STEPHEN H. MOSER, an individual, :
: **COMPLAINT FOR INJUNCTIVE**
: **AND DECLARATORY RELIEF**
        Plaintiffs, :
:
    -against- :
:
LINDA BOBRIN, in her official capacity as :
Register of Wills and Clerk of the Orphan :
Courts for Bucks County, Pennsylvania, :
:
        Defendant. :
:
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

  1.  This is an action for declaratory and injunctive relief to enjoin the discriminatory implementation of 23 Pa. Cons. Stat. Ann. § 1503, which violates the rights of Plaintiff Universal Life Church Monastery Storehouse ("ULC Monastery" or "the Church") and its ministers under the First and Fourteenth Amendments to the U.S. Constitution.

  2.  ULC Monastery is a non-denominational religious organization that champions religious freedom, social justice, and spiritual expression of all kinds. Its ecclesiastical belief system is derived from the fundamental belief that we are all children of the same universe. To further its mission, ULC Monastery ordains those who feel called to be a minister of the Church, and many who receive ordination choose to minister by officiating weddings.

3. Pennsylvania law authorizes "[a] minister, priest or rabbi of any regularly established church or congregation" to solemnize marriages. 23 Pa. Cons. Stat. Ann. § 1503. Defendant Linda Bobrin, Register of Wills and Clerk of the Orphan Courts for Bucks County ("Defendant"), is responsible for the issuance and recording of valid marriage licenses in Bucks County, Pennsylvania. Plaintiff Rev. Stephen H. Moser was ordained by ULC Monastery through the internet and wishes to solemnize marriages in Bucks County, but Defendant's office has taken the position that Pennsylvania law bars those who were ordained online from solemnizing marriages. As a result, Rev. Moser was forced to decline the invitation to perform two wedding ceremonies last year. Rev. Moser is now faced with the painful reality that he cannot accept the honor of solemnizing his daughter's wedding in April, 2021, despite the couple's desire that he do so.

4. By informing ULC Monastery ministers that marriages they perform will be invalid, Defendant has used the powers of her office to discourage ULC Monastery ministers from exercising rights afforded to ministers of other religions. Defendant's apparent policy of discrimination unconstitutionally prefers certain religions or religious denominations over others and burdens ULC Monastery's and its ministers' free exercise of religion. To the extent Defendant is correct that 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing marriages while granting that benefit to ministers of other religious denominations, the statute is unconstitutional.

5. The Constitution is clear: "one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). But Defendant—in reliance on 23 Pa. Cons. Stat. Ann. § 1503—has adopted just the sort of religious favoritism the

First and Fourteenth Amendments prohibit.  Plaintiffs respectfully request that the Court enjoin this discrimination.

## Parties

6. ULC Monastery is a non-denominational religious organization and a Washington non-profit corporation, with its headquarters in Seattle.

7. Rev. Stephen H. Moser is a resident of Bucks County, Pennsylvania, and an ordained minister of ULC Monastery.

8. Linda Bobrin is the duly elected and serving Register of Wills and Clerk of the Orphan Courts for Bucks County, Pennsylvania.  She is sued in her official capacity.

## Jurisdiction and Venue

9. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments, as well as the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

10. This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b), because events giving rise to the claims occurred within this District and, on information and belief, Defendant Linda Bobrin resides within this District.

## Factual Allegations

### ULC Monastery's Ministry and Outreach

12. ULC Monastery is a non-denominational church formed to advance religious faith and freedom with the following core tenets: (1) a person should always strive to do that which is right, and (2) all people are naturally endowed with the rights to practice their beliefs, regardless of what those beliefs are, as long as they do not infringe the rights of others and are within the

law.  ULC Monastery believes that spiritualty, theology, and religion are parts of man's mythology from the beginning of time.  ULC Monastery's ministry includes support of charitable organizations, advocacy for marriage equality, and other social justice causes.

13. ULC Monastery registered as a Washington non-profit corporation in 2006 and is headquartered in Seattle.

14. ULC Monastery embraces the principle that those who feel so called can become ministers through the Church.  ULC Monastery ordains ministers over the internet for free, and it sends credentials to ministers by mail.  ULC Monastery expects its ministers to conduct themselves according to the Church's two core tenets, but ULC Monastery rejects the idea that a Church's members should be made to obey the commands of any central leadership structure and embraces the equality of all individuals.  The Church believes its ministers may keep their own God or share it with others.  ULC Monastery's ministers perform religious rites and ceremonies, including baptisms, marriages, and funerals around the world.

15. Through its website, ULC Monastery offers its ministers resources such as training and assistance in how to officiate weddings, deliver sermons, or found a church. ULC Monastery also maintains a private social network online where its ministers can connect.  The Church invites ministers to contribute to its site as part of the Church's effort to build and maintain a global faith community by using the collaborative power of cyberspace.  The Church publishes a blog, which includes sermons written by ULC Monastery ministers, and where many commenters participate in discussions of religion, spirituality, and social justice.  ULC Monastery connects with its ministers through a weekly newsletter called "The Visionary," which highlights the role of religion and spirituality in society.

16. ULC Monastery strives to fulfill the spiritual needs of its global network of members and ministers by offering a wealth of information, a variety of services, and networking opportunities. The Church views this communion and fellowship of its many scattered ministers as just as valid a form of worship as the weekly services held in some of the world's more traditional religious institutions.

## Pennsylvania's Marriage Ordination Law

17. Pennsylvania regulates by statute the persons who may perform a valid marriage ceremony. Specifically, 23 Pa. Cons. Stat. Ann. § 1503 provides (underlining added):

> **(a) General rule.**--The following are authorized to solemnize marriages between persons that produce a marriage license issued under this part:
> (1) A justice, judge or magisterial district judge of this Commonwealth.
> (2) A former or retired justice, judge or magisterial district judge of this Commonwealth who is serving as a senior judge or senior magisterial district judge as provided or prescribed by law . . . .
> (3) An active or senior judge or full-time magistrate of the District Courts of the United States for the Eastern, Middle or Western District of Pennsylvania.
> (3.1) An active, retired or senior bankruptcy judge of the United States Bankruptcy Courts for the Eastern, Middle or Western District of Pennsylvania who is a resident of this Commonwealth.
> (4) An active, retired or senior judge of the United States Court of Appeals for the Third Circuit who is a resident of this Commonwealth.
> (5) A mayor of any city or borough of this Commonwealth.
> (5.1) A former mayor of a city or borough of this Commonwealth . . . .
> <u>(6) A minister, priest or rabbi of any regularly established church or congregation.</u>
> **(b) Religious organizations.**--Every religious society, religious institution or religious organization in this Commonwealth may join persons together in marriage when at least one of the persons is a member of the society, institution or

organization, according to the rules and customs of the society, institution or organization.

**(c) Marriage license needed to officiate.**--No person or religious organization qualified to perform marriages shall officiate at a marriage ceremony without the parties having obtained a marriage license issued under this part.

18. Those who receive ordination through the Church are "minister[s] . . . of any regularly established church or congregation." State court decisions have created confusion, however, as to whether 23 Pa. Cons. Stat. Ann. § 1503 authorizes discrimination against ULC Monastery ministers.

19. In *Heyer v. Hollerbush*, No. 2007-50-002132-Y08 (C.P. York, 2007), the parties sought a declaration that their marriage was invalid, arguing that the ULC Monastery minister who solemnized the wedding had no authority to do so under 23 Pa. Cons. Stat. Ann. § 1503. The York County Court of Common Pleas agreed and invalidated the marriage. Neither the minister nor ULC Monastery were parties to the case.

20. In *O'Neill v. O'Neill*, No. 08-01620-29-1 (C.P. Bucks, 2008), the Bucks County Court of Common Pleas reached the opposite conclusion and held that a marriage solemnized by a ULC Monastery minister was valid. The court found that it is "not for us to determine in this context how any faith chooses to ordain its leaders and propagate its beliefs."

21. The conflicting interpretations of Pennsylvania law have left ULC Monastery ministers uncertain as to whether 23 Pa. Cons. Stat. Ann. § 1503 bars them from solemnizing marriages in Pennsylvania.

## Pennsylvania's Marriage Licensing Procedures

22. Pennsylvania law delegates to counties the responsibility of issuing marriage licenses and record marriage certificates. *See* 23 Pa. Cons. Stat. Ann. §§ 1104, 1106. Defendant is responsible for issuing marriage licenses and recording marriage certificates in Bucks County.

23. Clerks such as Defendant may issue a marriage license only "upon written and verified application made by both of the parties intending to marry." 23 Pa. Cons. Stat. Ann. § 1302(a). The application "shall contain" information identifying the parties to the marriage, information related to the applicants' parents, whether either applicant has been married before, and "[a]ny other facts necessary to determine whether a legal impediment to the proposed marriage exists." 23 Pa. Cons. Stat. Ann. § 1302(b).

24. The Clerks "shall" issue a license only "if it appears from properly completed applications on behalf of each of the parties to the proposed marriage that there is no legal objection to the marriage." 23 Pa. Stat. and Cons. Stat. Ann. § 1307.

25. 23 Pa. Cons. Stat. Ann. § 1310 provides that the license must be in "substantially the following form":

Commonwealth of Pennsylvania
ss:
No. ....
County of (name)
To any person authorized by law to solemnize marriage:
You are hereby authorized to join together in holy state of matrimony, according
to the laws of the Commonwealth of Pennsylvania, (name) and (name).
Given under my hand and seal of the Court of Common Pleas of (name), at (city,
borough or town), on (date).
Signed
(Official Title)

26. The license issued by a county includes two certificates. The person solemnizing the wedding must sign one and give it to the married parties, and sign the other for return to the county "for recording" within ten days. 23 Pa. Cons. Stat. Ann. § 1504. By signing the certificate, the wedding officiant must certify that the couple was "by me united in marriage." 23 Pa. Cons. Stat. Ann. § 1510.

27. Bucks County uses a form certificate that requires the wedding officiant to identify their "title" and "religious denomination." Thus, ministers of ULC Monastery must identify themselves as such in the certificate they return to the county for recording.

28. After the decision in *Heyer v. Hollerbush*, No. 2007-50-002132-Y08 (C.P. York, 2007), counsel for the Register of Wills and Clerks of Orphans' Court Association of Pennsylvania (of which Defendant is a member) advised the Association's members to refuse to accept any marriage certificates signed by an officiant who had been ordained online.[1] On information and belief, counsel for the Association later rescinded this guidance.

29. Ministers who certify that they performed a valid marriage without the authority to do so may face criminal prosecution. A person is guilty of a second degree misdemeanor if he or she "makes [or] presents . . . any record [or] document . . . knowing it to be false" when the record is "received or kept by[] the government for information or record." 18 Pa. Cons. Stat. Ann. § 4911. A person is also guilty of a second degree misdemeanor if he or she "makes any written false statement which he does not believe to be true" with "intent to mislead a public servant in performing his official function." 18 Pa. Stat. and Cons. Stat. Ann. § 4904.

---

[1] Scott Kraus, *"'Till death do us part"? Not really, if your minister was ordained online—York court ruling invalidates a marriage and impact could spread*, The Morning Call, Sep. 15, 2007, available at https://www.mcall.com/news/mc-xpm-2007-09-15-3772304-story.html.

**Rev. Stephen H. Moser**

30. Rev. Stephen H. Moser was ordained as a ULC Monastery minister on May 11, 2020. He resides in Bucks County, Pennsylvania.

31. Rev. Moser sought ordination with ULC Monastery because ULC Monastery's tenets aligned with his own beliefs. Having been raised Baptist and married to a Catholic, Rev. Moser's beliefs are diverse. He did not want the restrictions of those traditional denominations, but sought out a church that embraced a higher power and would encourage him to personalize his own spiritual experience.

32. Rev. Moser feels called to provide a variety of services as a minister, including counseling, last rites, funerals, marriages, baptisms, and christenings. He has a large extended family, and many of his aging family members would prefer that a close relative perform religious services such as last rites and funerals. Rev. Moser considered ordination for years, but the COVID-19 pandemic underscored the importance of having a close family member available to perform religious services. At the time he was ordained, Rev. Moser also had three close family members with plans to be married in the next 18 months.

33. In June, 2020, Rev. Moser called the office of the Register of Wills and Clerk of the Orphan Courts for Bucks County, Pennsylvania. He told the representative who answered that he was "newly ordained," and he asked the representative about the process for obtaining a marriage license and solemnizing a wedding. The representative told Rev. Moser that, if he had been ordained through the internet, he could not perform legal marriages in Pennsylvania. The representative stated that Rev. Moser must have a church and a "following" to perform marriages. Rev. Moser asked what kind of proof Bucks County requires to show a minister has a "following," and the representative provided no explanation.

34. Rev. Moser had planned to perform his son's wedding in August, 2020. Rev. Moser and his son share similar spiritual beliefs, and his son's fiancé has a mixed religious background. The couple wanted a ceremony with religious elements that would be open and accepting. Rev. Moser viewed the invitation to solemnize the wedding as a profound responsibility and special opportunity. Unfortunately, however, he felt that he could not solemnize the wedding because of Bucks County's actions in implementing 23 Pa. Cons. Stat. Ann. § 1503. His son and his son's fiancé had to find someone else to perform the ceremony.

35. Rev. Moser's cousin also planned to marry in October, 2020, and he asked that Rev. Moser perform the wedding as part of a very small outdoor ceremony. Rev. Moser informed his cousin that, because Bucks County told him his ordination was not valid, he could not solemnize the wedding. Rev. Moser's cousin delayed his wedding for several weeks in the hope that Rev. Moser could solemnize the marriage at some point. In November, 2020, Rev. Moser's cousin went to the local courthouse and was married by a magisterial district judge indoors.

36. Rev. Moser's daughter plans to marry on April 19, 2021. Rev. Moser wishes to perform the wedding ceremony in Bucks County. However, Rev. Moser fears the marriage will be invalid if he performs the ceremony and signs the marriage certificate.

37. Rev. Moser wishes to perform additional wedding ceremonies and other services as a minister. He has not sought opportunities to perform other services as a minister because he has been told that he could not perform legal marriages in Bucks County.

38. ULC Monastery ministers wish to solemnize marriages in Bucks County but face discrimination and the threat that marriages they solemnize will be invalidated.

# COUNT I

## Violation of the Establishment Clause of the U.S. Constitution

39. Plaintiffs re-allege and incorporate all preceding paragraphs, as if fully set forth herein.

40. The First Amendment—as incorporated and applied to the states through the Fourteenth Amendment—provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I.

41. The "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

42. On information and belief, Defendant has adopted an apparent policy of discouraging and chilling the religious practice of ULC Monastery ministers by proclaiming that the Church's ministers have no legal authority to solemnize marriages. By discouraging only certain ministers or disfavored religious practices, this policy prefers certain religions or religious denominations over others in contravention of the Establishment Clause.

43. To the extent 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing weddings in Pennsylvania while permitting ministers of other religions or religious denominations to do so, the statute is unconstitutional because it prefers certain religions or religious denominations over others in contravention of the Establishment Clause.

44. No compelling governmental interest supports discrimination against ULC Monastery ministers or the policy of recognizing ordinations from some religions but not others.

45. Defendant's interpretation and application of 23 Pa. Cons. Stat. Ann. § 1503 further contravenes the Establishment Clause because it serves no secular purpose, lacks a

primary effect other than to advance or inhibit religion, and fosters an excessive government entanglement with religion.  *See Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

46. Defendant's actions in implementing 23 Pa. Cons. Stat. Ann. § 1503 are done under color of state law, and are in derogation of Plaintiffs' rights guaranteed under federal law, and therefore violate 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT II

### Violation of the Free Exercise Clause of the U.S. Constitution

47. Plaintiffs re-allege and incorporate all preceding paragraphs, as if fully set forth herein.

48. The First Amendment—as incorporated and applied to the states by through the Fourteenth Amendment—provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. Const. amend. I.

49. Many of ULC Monastery's ministers choose to minister by solemnizing marriages, and 23 Pa. Cons. Stat. Ann. § 1503, as interpreted and implemented by Defendant, burdens ULC Monastery's and its members' free exercise of religion by depriving them of the right to solemnize marriages.  Such restrictions on who may solemnize marriages are arbitrary and not supported by any rational basis.

50. Defendant's apparent policy of discouraging and chilling the religious practice of ULC Monastery ministers by proclaiming that the Church's ministers have no legal authority to solemnize marriages is not neutral and not of general application because its purpose is to confer a benefit on certain religious groups and not others.  As a result, the challenged policy is subject

to the most rigorous of scrutiny.  This policy is not supported by any compelling governmental interest.

51. To the extent 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing weddings in Pennsylvania while permitting ministers of other religions or religious denominations to do so, the statute is unconstitutional because is not neutral and not of general application because its purpose is to confer a benefit on certain religious groups and not others. As a result, the statute is subject to the most rigorous of scrutiny and is not supported by any compelling governmental interest.

52. Defendant's actions in implementing 23 Pa. Cons. Stat. Ann. § 1503 are taken under color of state law, and are in derogation of Plaintiffs' rights guaranteed under federal law, and therefore violate 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

## COUNT III

### Violation of the Equal Protection Clause of the U.S. Constitution

53. Plaintiffs re-allege and incorporate all preceding paragraphs, as if fully set forth herein.

54. The Equal Protection Clause of the Fourteenth Amendment provides that states may not "deny any person within [their] jurisdiction equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause protects from intentional discrimination against similarly situated individuals or discrimination implicating fundamental rights, such as religion. Intentional discrimination based on religious affiliation must survive heightened equal protection review.

55. Defendant's apparent policy of discouraging and chilling the religious practice of ULC Monastery ministers is intentionally discriminatory because it is meant to single out members of a certain religion or religious denomination.

56. To the extent 23 Pa. Cons. Stat. Ann. § 1503 bars ULC Monastery ministers from solemnizing weddings in Pennsylvania while permitting ministers of other religions or religious denominations to do so, the statute is intentionally discriminatory because it is meant to single out members of a certain religion or religious denomination.

57. This discrimination against ULC Monastery and its ministers is not supported by any compelling governmental interest or by any rational basis.

58. Defendant's actions in implementing 23 Pa. Cons. Stat. Ann. § 1503 are taken under color of state law, and are in derogation of Plaintiffs' rights guaranteed under federal law, and therefore violate 42 U.S.C. § 1983, entitling Plaintiffs to declaratory and injunctive relief, as well as costs and attorneys' fees as provided by 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court grant the following relief:

a. A judgment declaring that Defendant's apparent policy of discouraging and chilling the religious practice of ULC Monastery ministers is unconstitutional under the U.S. Constitution;

b. A judgment declaring 23 Pa. Cons. Stat. Ann. § 1503 is unconstitutional under the U.S. Constitution to the extent the statute prevents ULC Monastery ministers from solemnizing marriages while allowing ministers of other religions or denominations to do so;

c. A preliminary and permanent injunction prohibiting Defendant from refusing recognize the validity of marriages solemnized by ULC Monastery ministers, from deterring or preventing any ULC Monastery minister from performing a marriage, and from otherwise applying 23 Pa. Cons. Stat. Ann. § 1503 in a manner that discriminates against ULC Monastery or its ministers;

d. A judgment awarding Plaintiffs their costs and attorneys' fees; and

e. Such other relief as the Court deems just and proper.

Respectfully submitted,

MCELDREW YOUNG PURTELL & MERRITT

By: /s/ John J. Coyle_____

John J. Coyle, Esq.
PA Attorney ID: 312084
123 South Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800 (phone)
(215) 545-8805 (fax)
jcoyle@mceldrewyoung.com

DAVIS WRIGHT TREMAINE LLP

By: /s/ Bruce Johnson_____

Bruce E.H. Johnson (*pro hac vice pending*)
Ambika Kumar Doran (*pro hac vice pending*)
Robert E. Miller (*pro hac vice pending*)
920 Fifth Ave., Ste 3300
Seattle, WA 98104-1610
(206) 622-3150 (phone)
(206) 757-7700 (fax)
brucejohnson@dwt.com
ambikadoran@dwt.com
robertmiller@dwt.com

*Attorneys for Plaintiffs Universal Life Church Monastery Storehouse and Stephen H. Moser*